**No. 17-3352**
IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

Telescope Media Group, Carl Larsen, and Angel Larson,

Appellants,

vs.

Kevin Lindsey and Lori Swanson,

Appellees.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

_____

**APELLEES' BRIEF**

_____

Kristen K. Waggoner
David A. Cortman
Jeremy D. Tedesco
Jonathan A. Scruggs
Rory T. Gray
Jacob P. Warner
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jtedesco@ADFlegal.org

Renee K. Carlson
CARLSON LAW, PLLC
855 Village Center Drive, Ste 259
St. Paul, MN 55127
(612) 455-8950
rcarlson@rkclawmn.com

Attorneys for Appellants

OFFICE OF THE ATTORNEY
GENERAL
State of Minnesota

ALETHEA M. HUYSER
Assistant Solicitor General
Atty. Reg. No. 0389270
JANINE KIMBLE
Atty. Reg. No. 0392032
ERIC BROWN
Atty. Reg. No. 0393078
Assistant Attorneys General
445 Minnesota Street, Suite 1100
St. Paul, MN 55101-2128
Telephone: (651) 757-1243
Fax: (651) 282-5832
alethea.huyser@ag.state.mn.us

Attorneys for Appellees

**SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT**

The Minnesota Human Rights Act ("MHRA") prohibits businesses from discriminating against customers on the basis of, among other things, sexual orientation. Appellants own a business that sells videography services to the public. They allege that they would like to begin selling wedding video services to opposite-sex couples, but they do not want to sell those services to same-sex couples. Appellants allege they have a constitutional right to deny these services to same-sex couples and that the MHRA infringes on that right.

Appellants brought this pre-enforcement challenge against Appellees, the Commissioner of the Minnesota Department of Human Rights Kevin Lindsey and Minnesota Attorney General Lori Swanson, and sought a preliminary injunction. Because Appellants are wrong under all of their theories, this Court should affirm the district court's dismissal of Appellants' Amended Complaint and its denial of their request for preliminary injunction.

Appellees respectfully request thirty (30) minutes for oral argument.

**TABLE OF CONTENTS**

**Page**

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT ....................i

TABLE OF AUTHORITIES .........................................................................iv

LEGAL ISSUES ..........................................................................................1

STATEMENT OF THE CASE.......................................................................2

    A.    The Minnesota Human Rights Act.........................................2

    B.    Appellants' Allegations.........................................................4

    C.    Appellants' Lawsuit .............................................................5

    D.    The District Court's Order ....................................................5

SUMMARY OF ARGUMENT .......................................................................6

ARGUMENT ...............................................................................................8

I.    THE MHRA DOES NOT VIOLATE THE FIRST AMENDMENT RIGHT TO FREE SPEECH. ....................................................................................8

    A.    The MHRA Does Not Compel Speech. ................................10

    B.    The MHRA Is Content And Viewpoint Neutral .................16

    C.    Appellants' Arguments Are Without Merit. ........................18

    D.    The MHRA Satisfies Any Level Of Scrutiny .....................21

II.    APPELLANTS' FREE ASSOCIATION CLAIM FAILS AS A MATTER OF LAW. ......25

III.    THE MHRA IS NEUTRAL AND GENERALLY APPLICABLE AND THEREFORE DOES NOT VIOLATE THE FREE EXERCISE CLAUSE. ......................27

IV.    THE MINNESOTA HUMAN RIGHTS ACT DOES NOT VIOLATE EQUAL PROTECTION AS-APPLIED. ........................................................34

V.      THE MINNESOTA HUMAN RIGHTS ACT DOES NOT VIOLATE THE UNCONSTITUTIONAL CONDITIONS DOCTRINE AS-APPLIED. ...........................37

VI.     MINN. STAT. § 363A.17(3) DOES NOT VIOLATE PROCEDURAL DUE PROCESS BECAUSE "LEGITIMATE BUSINESS PURPOSE" IS NOT UNCONSTITUTIONALLY VAGUE. ................................................................38

CONCLUSION ...........................................................................................41

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL COURT CASES**

*281 Care Committee v. Arneson*,
766 F.3d 774 (8th Cir. 2014) ...............................................................17

*Adams v. Zenas Zelotes, Esq.*,
606 F.3d 34 (2d Cir. 2010)...................................................................25

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995).................................................................... 1, 36

*Ahlberg v. Chrysler Corp.*,
481 F.3d 630 (8th Cir. 2007) ...............................................................21

*Alaskan Indep. Party v. Alaska*,
545 F.3d 1173 (9th Cir. 2008) .............................................................24

*Axson-Flynn v. Johnson*,
356 F.3d 1277 (10th Cir. 2004) ...........................................................33

*Board of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972).............................................................................39

*Bob Jones Univ. v. United States*,
461 U.S. 574 (1983).............................................................................12

*Bogren v. Minnesota*,
236 F.3d 399 (8th Cir. 2000) ................................................. 1, 7, 36

*Bourgeois v. Peters*,
387 F.3d 1303 (11th Cir. 2004) ...........................................................38

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000).............................................................................20

*Christiansen v. W. Branch Cmty. Sch. Dist.*,
674 F.3d 927 (8th Cir. 2012) ...............................................................39

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
   508 U.S. 520 (1993) ................................................................ 7, 28, 30, 32

*Combs v. Homer-Ctr Sch. Dist*,
   540 F.3d 231 (3d Cir. 2008)...................................................................32

*Connally v. General Construction Co.*,
   269 U.S. 385 (1926)................................................................................39

*Corp. of Presiding Bishop of Church of Christ of Latter Day-Saint v. Amos*,
   483 U.S. 327 (1987)................................................................................31

*D'Amario v. Providence Civic Cntr. Auth.*,
   639 F. Supp. 1538 (D.R.I. 1986), *aff'd*, 815 F.2d 692 (1st Cir. 1987) ...............15

*E.E.O.C. v. Catholic University*,
   83 F.3d 455 (D.C. Cir. 1996) ................................................................33

*E.E.O.C. v. Fremont Christian Sch.*,
   781 F.2d 1362 (9th Cir. 1986) ...............................................................12

*E.E.O.C. v. Mississippi Coll.*,
   626 F.2d 477 (5th Cir. 1980) .................................................................12

*Emp't Div., Dep't of Human Res. v. Smith*,
   494 U.S. 872 (1990)......................................................... 1, 7, 27, 32, 33

*Ex Parte Young*,
   209 U.S. 123 (1908)................................................................................17

*Ganley v. Minneapolis Park and Recreation Bd.*,
   491 F.3d 743 (8th Cir. 2007) ................................................................35

*Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490 (1949) ............................. 8, 21

*Gold Star Taxi & Transp. Serv. v. Mall of Am. Co.*,
   987 F. Supp. 741 (D. Minn. 1997).........................................................30

*Gray v. Kohl*,
   568 F. Supp. 2d 1378 (S.D. Fla. 2008) .................................................41

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)............................................................................ 12, 25

*Hobbie v. Unemp't Appeal Comm'n of Fla.*,
    480 U.S. 136 (1987)..................................................................................31

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995)..................................................................... 19, 20, 23

*Kissinger v. Board of Trustees of Ohio State University*,
    5 F.3d 177 (6th Cir. 1993) .....................................................................32

*Lee v. Weisman*,
    505 U.S. 577 (1992)..............................................................................34

*Leebaert v. Harrington*,
    332 F.3d 134 (2d Cir. 2003)..................................................................32

*Lefkowitz v. Cunningham*,
    431 U.S. 801 (1977)..............................................................................38

*Loving v. Virginia*,
    388 U.S. 1 (1967)..................................................................... 14, 20, 29

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................... 1, 29, 30, 39, 40

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974)..................................................................... 18, 19

*New York State Club Ass'n, Inc. v. City of New York*,
    487 U.S. 1 (1988)..................................................................................12

*Newman v. Piggie Park Enterprises, Inc.*,
    256 F.Supp. 941 (D.S.C. 1966), *aff'd*, 390 U.S. 400 (1968) ...................... 14, 29

*Norwood v. Harrison*,
    413 U.S. 455 (1973)..............................................................................25

*O'Toole v. O'Connor*,
    802 F.3d 783 (6th Cir. 2015) ................................................................24

*Obergefell v. Hodges*,
    135 S. Ct. 2584 (2015) ..................................................................13

*Pacific Gas & Elec. Co. v. Public Utilities Commission of California*,
    475 U.S. 1 (1986) .......................................................................19

*Perry v. Sindermann*,
    408 U.S. 593 (1972) ............................................................... 37, 38

*PruneYard Shopping Center v. Robins*,
    447 U.S. 74 (1980) .....................................................................16

*R.A.V. v. City of St. Paul, Minn.*
    505 U.S. 377 (1992) ............................................................... 18, 21

*Regan v. Taxation With Representation of Washington*,
    461 U.S. 540 (1983) ...................................................................37

*Riley v. Nat'l Fed. of Blind of N.C., Inc.*,
    487 U.S. 781 (1988) .....................................................................8

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ............................................................. passim

*Rumsfeld v. Forum for Acad. and Instit. Rights, Inc.*,
    547 U.S. 47 (2006) ............................................................... passim

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ...................................................................37

*Scott v. CSL Plasma, Inc.*,
    151 F. Supp. 3d 961 (D. Minn. 2015) ...........................................30

*Sierra Club v. Robertson*,
    28 F.3d 753 (8th Cir. 1994) .......................................................17

*Solum v. Board of County Comm'rs for County of Houston*,
    880 F. Supp. 2d 1008 (D. Minn. 2012) .........................................35

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ................................................................ 8, 11

*Texas v. Johnson*,
   491 U.S. 397 (1989)......................................................................21

*True v. Nebraska*,
   612 F.3d 676 (8th Cir. 2010) ......................................................35

*Turner Broadcasting System, Inc. v. Federal Communications Commission*,
   512 U.S. 622 (1994)....................................................................16

*United States v. Am. Library Ass'n, Inc.*,
   539 U.S. 194 (2003)....................................................................37

*United States v. Lee*,
   455 U.S. 252 (1982)....................................................................27

*United States v. O'Brien*,
   391 U.S. 367 (1968)....................................................................21

*Wilking v. County of Ramsey*,
   153 F.3d 869 (8th Cir. 1998) ......................................................40

*Williams v. Clarke*,
   40 F.3d 1529 (8th Cir. 1994) ............................................ 34, 38, 41

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972)....................................................................28

*Wooley v. Maynard*,
   430 U.S. 705 (1977)....................................................................19

*Young v. Rickets*,
   825 F.3d 487 (8th Cir. 2016) .........................................................9

**STATE COURT CASES**

*Aase v. Wapiti Meadows Cmty. Techs. & Servs., Inc.*,
   832 N.W.2d 852 (Minn. App. 2013)............................................ 30, 40

*Blanding v. Sports & Health Club, Inc.*,
   373 N.W.2d 784 (Minn. App. 1985), *aff'd*, 389 N.W.2d 205 (Minn. 1986) 12, 13

*Craig v. Masterpiece Cakeshop, Inc.*,
   370 P.3d 272 (Colo. App. 2015), *rev. granted* Supreme Ct. No. 16-111.... 13, 29

*Elane Photography, LLC v. Willock*,
  309 P.3d 53 (N.M. 2013), *cert. denied*, 134 S. Ct. 1787 (2014) ................ passim

*Gifford v. McCarthy*,
  137 A.D.3d 30 (N.Y. App. Div. 2016) ................................................ 13, 15, 26

*In the Matter of: Melissa Elaine Klein, dba Sweetcakes by Melissa, and Aaron Wayne Klein, dba Sweetcakes by Melissa, and, in the Alternative, Individually as an Aider and Abettor under ORS, 659A.406, Respondents,*
  2015 WL 4868796 (Or. Bur. Labor & Indust. July 2, 2015) ............................. 13

*Ridler v. Olivia Pub. Sch. Sys.*, No. 653
  432 N.W.2d 777 (Minn. App. 1988) ............................................................ 40

*State by McClure v. Sports & Health Club, Inc.*,
  370 N.W.2d 844 (Minn. 1985) .................................................................. passim

*State of Washington v. Arlene's Flowers, Inc.*,
  389 P.3d 543 (Wash. 2017) ....................................................................... 14, 20

*State v. Sci. Computers, Inc.*,
  393 N.W.2d 200 (Minn. App. 1986) ........................................................... 40

**STATUTORY AUTHORITIES**

1885 Minn. Laws 295 ................................................................................ 2, 22

1993 Minn. Laws 131-32 .............................................................................. 4

Minn. Stat. § 363A.11 ............................................................................ passim

Minn. Stat. § 363A.17 ............................................................................ passim

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 12 ........................................................................................ 6

**LEGISLATIVE HISTORY**

Hearing on S.F. 444, S. Jud. Comm., 78th Minn. Leg., Feb. 22, 1993 ...................... 3

Hearing on S.F. 585, H. Jud. Comm., 78th Minn. Leg., Mar.5, 1993 ........................ 3

**UNITED STATES CONSTITUTION**

U.S. Const. amend. I   …………………………………………………….1, 8

U.S. Const. amend. XIV ……………………………………………1, 8, 39

**OTHER AUTHORITIES**

William N. Eskridge Jr., *Noah's Curse:  How Religion Often Conflates Status, Belief, and Conduct to Resist Antidiscrimination Norms*,
  45 GA. L. REV. 657 (2011) …………………………………………..14

# LEGAL ISSUES

I.      Does the Minnesota Human Rights Act violate the First Amendment by prohibiting all business owners from discriminating against customers, based on the customer's protected status, when selling goods or services to the customer, regardless of the business owners' personal beliefs?

        *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984)
        *Rumsfeld v. Forum for Acad. & Instit. Rights*, 547 U.S. 47 (2006)
        *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872 (1990)
        U.S. Const., amend. I.
        Minn. Stat. §§ 363A.11, 363A.17

II.      Does the Minnesota Human Rights Act violate the Equal Protection Clause even though it treats all similarly situated business owners equally, regardless of their personal belief?

        *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995)
        *Bogren v. Minnesota*, 236 F.3d 399 (8th Cir. 2000)
        U.S. Const., amend. XIV
        Minn. Stat. §§ 363A.11, 363A.17

III.      Does a state law prohibiting a business from discrimination in the provision of goods and services to customers impose an unconstitutional condition?

        *Rumsfeld v. Forum for Acad. & Instit. Rights*, 547 U.S. 47 (2006)
        Minn. Stat. §§ 363A.11, 363A.17

IV.      Is the phrase "legitimate business purpose," as used in the Minnesota Human Rights Act, unconstitutionally vague under the Fourteenth Amendment?

        *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984)
        *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)
        U.S. Const., amend. XIV
        Minn. Stat. §§ 363A.11, 363A.17

**STATEMENT OF THE CASE**

**A.     The Minnesota Human Rights Act**

The Minnesota Legislature passed the Minnesota Human Rights Act, a state law prohibiting discrimination, approximately 130 years ago. Act of March 7, 1885, ch. 224, § 1, 1885 Minn. Laws 295, 296.  At that time, in 1885, the MHRA provided that all persons in Minnesota "of every race and color" would be entitled to "full and equal enjoyment" of public accommodations and services "regardless of any previous condition of servitude." *Id.*

In 1990, Minnesota's Governor convened a task force to evaluate whether discrimination based on sexual orientation was occurring and, if so, to make appropriate recommendations.  Report of the Governor's Task Force on Lesbian and Gay Minnesotans (1991), App. 325.[1]  The Task Force found "substantial societal hostility to homosexuality" which was "often embodied in federal and state laws and politics." *Id.* at App. 330.

> Among the key findings of the Task Force were:
>
> Out of several hundred recommendations received by this Task Force at public hearings and briefings, an underlying theme was the need to add gays and lesbians as a protected class under the Minnesota Human Rights Act. . . . [T]he overwhelming body of testimony from gays, lesbians and heterosexuals indicates that, as a group, gays and lesbians are the targets of considerable discrimination in the State of Minnesota. . . .

---

[1] "App." refers to the Joint Appendix.

> Several people testified that they had been denied motel or hotel rooms when the inn-keepers discovered they were gay, remarking "We don't want your kind here."
>
> . . . .
>
> The overwhelming body of testimony and data indicates that discrimination against gays and lesbians is wide-spread. . . . Adding sexual orientation to the Minnesota Human Rights Act would do much to help eliminate or reduce this problem.

*Id.* at 332-33. The Task Force concluded that the discrimination was "damaging to gay men and lesbians and ultimately is damaging to society as a whole." *Id.* at 330.

A bill was introduced in 1993 to add sexual orientation to the list of protected classes in the MHRA. The Legislature took testimony, which included support for the bill from religious organizations. Hearing on S.F. 444, S. Jud. Comm., 78th Minn. Leg., Feb. 22, 1993 (audio tape) (comments of Brian Rusche, Joint Religious Legislative Council; comments of Fr. Ed Flahavan, Governor's Task Force on Lesbian and Gay Minnesotans); Hearing on H.F. 585, H. Jud. Comm., 78th Minn. Leg., Mar. 5, 1993 (audio tape) (comments of Brian Rusche, Joint Religious Legislative Council; comments of Fr. Ed Flahavan, Governor's Task Force on Lesbian and Gay Minnesotans); *see also* Joint Religious Legislative Coalition Position on Human Rights With Regard to Sexual Orientation (Feb. 25, 1993), App. 463-470; Statement of James D. Habiger, Executive Director of the Minnesota Catholic Conference (Mar. 1, 1993), App. 473-74; Letter from Hubert H. Humphrey, Minnesota Attorney General, to Allan H. Spear, Minnesota State

3

Senator (Mar. 1, 1993) ("The fundamental principles underlying your proposed legislation are as compelling as they are simple: the right to hold a job should be based solely on the ability to perform the work; the right to housing should not be denied on the basis of prejudice against persons of a particular sexual orientation; the right to public accommodations, public services and freedom from personal harm, should be guaranteed to all."), App. 477-78.

The Minnesota Legislature subsequently amended the Minnesota Human Rights Act to prohibit discrimination based on sexual orientation. *See* Act of April 2, 1993, ch. 22, § 10, 1993 Minn. Laws 131-32.

### B.    Appellants' Allegations

Angel and Carl Larsen are a married couple who own and operate Telescope Media Group, a for-profit company.  Am. Compl. at ¶¶ 1, 21-23, App. 65, 68. Appellants allege that Telescope Media Group enters into contracts to provide videography services to its clients.  Am. Compl. at ¶¶ 82, 87, 89, App. 77. Appellants state that they try to restrict their videography work to "promote messages" that are consistent with their beliefs.  *Id.*  at ¶ 97, App. 79.  Appellants also state that they frequently turn down videography projects because the requests for their service exceed their capacity.  *Id.* at ¶ 98.

Appellants allege that their projects have not historically included wedding videography, but they express a desire to begin selling wedding video services in

the future.  *Id.* at ¶ 160, App. 87.  However, Appellants believe that same-sex marriage is not "morally equivalent to the historic, biblically-orthodox definition of marriage as between one man and one woman."  *Id.* at ¶ 116, App. 81.  Appellants therefore wish to enter into contracts to record opposite-sex weddings.  *Id.* at ¶¶ 129-34, App. 82-83. Appellants oppose same-sex marriage and wish to refuse contracts to record same-sex weddings.  *Id.* at ¶¶ 5-6, App. 66.

### C.  Appellants' Lawsuit

Appellants allege that the MHRA violates their constitutional rights under the First and Fourteenth Amendments of the United States Constitution.  *See generally id.*  On January 13, 2017, Appellants filed a motion for preliminary injunction, precluding enforcement of the MHRA for denying wedding video services to same-sex couples.  App. 117-124.  Appellees moved to dismiss and opposed the motion for preliminary injunction.  App. 216-315.

### D.  The District Court's Order

The United States District Court for the District of Minnesota, Hon. Judge Tunheim presiding, granted Appellees' motion to dismiss, dismissed Appellants' claims with prejudice, and denied Appellants' motion for preliminary injunction as moot.  District Court Order ("Order"), Add. 63.[2]

---

[2] "Add." refers to the Addendum attached to the Appellants' Brief (hereinafter "App. Br.")

The district court concluded that Appellants had failed to state a claim under the First Amendment because the Minnesota Human Rights Act is a neutral and generally applicable law that, on its face, does not regulate speech.  Add. 28-33.  As applied to Appellants, the Court assumed that the MHRA may incidentally effect speech, but held that the law was content and viewpoint neutral, and survived both intermediate and strict scrutiny.  Add. 33-41.  The district court also found that Appellants' remaining claims failed because the MHRA does not run afoul of the relevant constitutional protections and, in any event, survives the applicably level of scrutiny.  Add. 49-59.

## SUMMARY OF ARGUMENT

Dismissal of Appellants' claims is required under Federal Rule of Civil Procedure 12, and Appellants' request for a preliminary injunction likewise fails.

The MHRA does not violate the First Amendment because it is a neutral law that regulates conduct, not expression.  *Rumsfeld v. Forum for Acad. & Instit. Rights*, 547 U.S. 47, 62 (2006).  To the extent the law has incidental effects on speech, the Supreme Court has found that those incidental effects are not constitutionally significant.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984).  Such effects are also content and viewpoint neutral because the MHRA does not favor one type of speech over another and is indifferent to the business owner's viewpoint.  *Id.*; *Rumsfeld*, 547 U.S. at 62.

6

The MHRA also does not impair Appellants ability to associate freely, and a requirement that Appellants serve customers regardless of protected status does not involve "association" in a constitutional sense. *Rumsfeld*, 547 U.S. at 69. Furthermore, the MHRA is a neutral and generally applicable law and therefore does not violate the Free Exercise Clause. *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531, 533 (1993); *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 851 (Minn. 1985).

The MHRA does not violate the Equal Protection Clause because Appellants have not identified any similarly-situated individuals who are treated differently. *See Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). Nor does the MHRA violate the unconstitutional conditions doctrine because it does not infringe on Appellants' free speech rights and Appellants have not alleged the government has denied them a benefit. *Rumsfeld*, 547 U.S. at 59. The MHRA's use of the phrase "legitimate business purpose" also does not render the statue unconstitutionally vague because it is a familiar standard commonly used by courts around the country. *See Jaycees*, 468 U.S. at 629-30.[3]

---

[3] Appellants have not appealed dismissal of their substantive due process claim. Add. 59-62; *see generally* Appellants' Brief.

In summary, longstanding constitutional jurisprudence of the Supreme Court has concluded that anti-discrimination laws, such as the MHRA, are constitutionally valid and satisfy any applicable level of scrutiny. *Jaycees*, 468 U.S. at 628; *Rumsfeld*, 547 U.S. at 62.

## ARGUMENT

### I. THE MHRA DOES NOT VIOLATE THE FIRST AMENDMENT RIGHT TO FREE SPEECH.

The First Amendment prohibits states from making laws "abridging the freedom of speech." U.S. Const. amends. I, XIV. The First Amendment protects both "the decision of what to say and what not to say." *Riley v. Nat'l Fed. of Blind of N.C., Inc.*, 487 U.S. 781 (1988). But "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566-67 (2011). "It is also true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* at 567.

"[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed." *Rumsfeld v. Forum for Acad. and Instit. Rights, Inc.*, 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949));

*Young v. Rickets*, 825 F.3d 487, 492 (8th Cir. 2016) (same). As the Supreme Court has explained:

> Congress, for example, can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an employer to take down a sign reading "White Applicants Only" hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct.

*Rumsfeld*, 547 U.S. at 62. Appellants' First Amendment free speech claims fail because the MHRA regulates only commercial conduct and economic activity, not expression. To the extent the MHRA has any effects on speech as applied to Appellants, the impact is merely incidental and requires nothing except for the Appellants to provides services to customers regardless of their sexual-orientation.

As the district court correctly held, the MHRA is a content-neutral and generally-applicable business regulation that does not implicate the compelled speech doctrine. Add. 27-49. Further, "Minnesota has a compelling, and not just a substantial, interest in preventing invidious discrimination in public accommodations and contracting because of sexual orientation, and that interest is present in the context of businesses providing wedding-related services." *Id.* at 38. The MHRA does not violate Appellants' freedom of speech, but instead protects the important ideal that when a business opens its doors to the general public, it may not reject customers because of who they are.

**A.     The MHRA Does Not Compel Speech.**

The compelled speech doctrine limits the government's ability to force an individual to personally "speak the government's message." *Rumsfeld*, 547 U.S. at 61.  On appeal, Appellants' primary contention is the incorrect allegation that the MHRA unconstitutionally compels their speech.[4]  But the MHRA is silent on speech and expression.  Instead, the MHRA regulates conduct, requiring only that Appellants and all other businesses held open to the public in Minnesota treat people equally regardless of protected status.  *See Jaycees*, 468 U.S. at 624 (holding that the goal of MHRA is "unrelated to the suppression of expression").

The MHRA provides that it is an unfair discriminatory practice:

> (1) **to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of** race, color, creed, religion, disability, national origin, marital status, **sexual orientation**, or sex, or for a taxicab company to discriminate in the access to, full utilization of, or benefit from service because of a person's disability[.]

---

[4] The Appellants argue two First Amendment violations: (1) the creation of wedding videos, and (2) the posting of those videos to their website.  The district court properly disregarded Appellants' allegation related to the posting of videos to the website as failing to even meet the requirements for standing.  Add. 19-22. The MHRA plainly does not regulate Appellants' social media, and does not require Appellants to display or publish same-sex wedding videos on their social media, website, or anywhere else.  That Appellants may elect unilaterally to distribute certain videos on social media is irrelevant to the Court's interpretation of this law.  *Id.*; *see also Elane Photography*, 309 P.3d at 68 (plaintiff's choice of which photographs to display to the public "are entirely its own").

Minn. Stat. § 363A.11, subd. 1(a)(1) (emphasis added).

It is also an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service:

> (3) **to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of** a person's race, national origin, color, sex, **sexual orientation**, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose.

Minn. Stat. § 363A.17(3) (emphasis added).[5]

The MHRA, which has been in place for over 130 years, "neither limits what [plaintiffs] may say nor requires them to say anything." *Rumsfeld*, 547 U.S. at 60. Rather, "[i]t affects what [plaintiffs] must *do*—afford equal access…—not what they may or may not *say*." *Id.* (emphasis in original). As the district court properly held, [t]he law does not compel the [Appellants] to speak a specific government message," and "does not dictate how the [Appellants] carry out any of their creative decisions regarding filming and editing." Add. 43.

The Supreme Court has recognized that the regulation of economic activity and conduct, such as that prescribed by the MHRA, does not violate the First Amendment. *See Sorrell*, 564 U.S. at 566-67 (explaining that the First Amendment

---

[5] The MHRA only applies to Appellants to the extent they are a public accommodation or be engaged in a business or the provision of a service. Appellants allege that the laws apply to them. *See* Am. Compl. ¶¶ 81-82, App. 23. To the extent Appellants would hold their videography services out to the public, the Minnesota Department of Human Rights agrees the MHRA would apply.

does not prevent regulation of economic activity and conduct and also "does not prevent restriction directed at commerce or conduct from imposing incidental burdens on speech"). Indeed, anti-discrimination laws have been universally upheld as constitutional as it relates to business offerings of goods, services, and employment. *Hishon v. King & Spalding*, 467 U.S. 69 (1984) (law firm did not have First Amendment rights of expression or association to discriminate on the basis of gender in violation of Title VII); *Bob Jones Univ. v. United States*, 461 U.S. 574 (1983) (First Amendment does not preclude federal government from withholding tax benefits to religious school with racially discriminatory admissions standards based on their religious beliefs); *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1 (1988) (private club has not shown First Amendment right to exclude women in violation of city anti-discrimination law); *E.E.O.C. v. Fremont Christian Sch.*, 781 F.2d 1362, 1369 (9th Cir. 1986) (religious school does not have a First Amendment right to discriminate based on gender and marital status in violation of Title VII); *E.E.O.C. v. Mississippi Coll.*, 626 F.2d 477, 489 (5th Cir. 1980) (applying Title VII to religious school does not violate First Amendment); *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 852, 853 (Minn. 1985) (First Amendment did not permit health club owned by "born again Christians" to refuse to hire or fire individuals based on lifestyles that did not comport with owners' religious beliefs); *Blanding v. Sports & Health Club,*

*Inc.*, 373 N.W.2d 784, 793 (Minn. App. 1985), *aff'd*, 389 N.W.2d 205 (Minn. 1986) (applying Minneapolis ordinance prohibiting discrimination on the basis of sexual orientation does not violate First Amendment).

In 2015, the United States Supreme Court held that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2604-05 (2015). Since the United States Supreme Court's ruling, as well as passage of state same-sex marriage laws, courts have consistently continued to reject claims that anti-discrimination laws requiring businesses to serve same-sex couples violate First Amendment rights. *See Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272 (Colo. App. 2015), *rev. granted*, Supreme Court No. 16-111 (wedding cake baker); *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013) (wedding photographer), *cert. denied*, 134 S. Ct. 1787 (2014); *Gifford v. McCarthy*, 137 A.D.3d 30, 42 (N.Y. App. Div. 2016) (wedding venue); *In the Matter of: Melissa Elaine Klein, dba Sweetcakes by Melissa, and Aaron Wayne Klein, dba Sweetcakes by Melissa, and, in the Alternative, Individually as an Aider and Abettor under ORS 659A.406, Respondents*, 2015 WL 4868796, at *18 (Or. Bur. Labor & Indust. July 2, 2015) (wedding cake baker); *see also State of*

*Washington v. Arlene's Flowers, Inc.*, 389 P.3d 543 (Wash. 2017), *cert petition filed* (U.S. July 14, 2017) (florist).[6]

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, is particularly instructive. *Rumsfeld* involved law schools that tried to exclude the military from recruiting events at their schools based on the military's stance on homosexuality. 547 U.S. at 51-52. In response, Congress passed a law called the "Solomon Amendment" requiring that military recruiters be given the same access to students as other employers, which the schools alleged violated their First Amendment rights. *Id.* The Supreme Court disagreed and held that the Solomon Amendment regulated only "conduct, not speech." *Id.* at 60. It reasoned that "accommodating the military's message does not affect the law school's speech, because the schools are not speaking when they host interviews and recruiting receptions." *Id.* at 65. The Court further explained that hosting recruiters did not

---

[6] Courts have also rejected similar objections when raised in race-based cases. *See Loving v. Virginia*, 388 U.S. 1, 3 (1967); *Newman v. Piggie Park Enterprises, Inc.*, 256 F. Supp. 941, 945 (D.S.C. 1966) (owner of restaurant chain refused to serve black patrons based on his religious beliefs opposing racial integration), *aff'd* 390 U.S. 400, n.5 (1968) (describing "defendants' contention that [Title VII] was invalid because it 'contravenes the will of God' and constitutes an interference with the 'free exercise of Defendant's religion" as "patently frivolous" and explaining that "this is not even a borderline case"); *see also* William N. Eskridge Jr., *Noah's Curse: How Religion Often Conflates Status, Belief, and Conduct to Resist Antidiscrimination Norms*, 45 GA. L. REV. 657, 660, 671-77 (2011) ("There is nothing new about civil equality-religious liberty clashes, for they proliferated over the issue of race.")

suggest the "law schools agree with any speech by recruiters, and nothing in the Solomon Amendment restricts what law schools may say about the military's policies." *Id.* at 65.

Similarly, the MHRA only prohibits Appellants' from refusing to sell their business services—their ability to operate a camera or edit film—to customers based on the customers' race or sexual-orientation, among other things. The MHRA is therefore regulating Appellants conduct, not their speech.

Further, when selling services to the public, Appellants "express[] [their] clients' messages in [their] photographs . . . because [they are] hired to do so." *Elane Photography*, 309 P.3d at 66; *see also D'Amario v. Providence Civic Cntr. Auth.*, 639 F. Supp. 1538, 1541 (D.R.I. 1986), *aff'd* 815 F.2d 692 (1st Cir. 1987) (event photography is "conduct, pure and simple.") Appellants do not allege they choose the location of the wedding, the guests, the food served, the decorations, or the music played at the weddings they film. As correctly noted by the district court, they are instead capturing the wedding of someone else on film and "showcasing the messages and preferences of the people getting married and attendees." Add. 44. *See Rumsfeld*, 547 U.S. at 65 (reasoning that law schools did not necessarily agree with speech of military recruiters but requirement that they accommodate and the message did not infringe on the school's freedom of speech). *See also Gifford*, 137 A.D.3d at 42 ("[R]easonable observers would not perceive the

[owners'] provision of a venue and services for a same-sex wedding ceremony as an endorsement of same-sex marriage.").

Furthermore, as *Rumsfeld* recognized, Appellants are free to disassociate themselves from the views of their clients and certainly are not compelled to affirm any government position or view. *Rumsfeld*, 547 U.S. at 65; *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 76-77 (1980) (upholding a state law requiring a shopping center to allow expressive activities by others on the property because "there was little likelihood that the views of those engaging in the expressive activities would be identified with the owner, who remained free to disassociate himself from those views and who was not "compelled to affirm a belief in any government prescribed point of view"); *Turner Broadcasting System, Inc. v. Federal Communications Commission*, 512 U.S. 622 (1994) (recognizing diminished First Amendment protection when media company was conduit for the messages of others).

## B. The MHRA Is Content And Viewpoint Neutral

While the MHRA does not facially regulate the content of speech at all, to the extent there are incidental effects on speech, the United States Supreme Court has already concluded that the MHRA is content and viewpoint neutral. *Jaycees*, 468 U.S. at 628 (recognizing that even if there is an incidental abridgment of speech, the MHRA prevents "unique evils" caused by discrimination that are

"wholly apart from the point of view such conduct may transmit").  *See also* Add. 33-35 (district court reaching same conclusion); Minn. Stat. § 363A.11, subd. 1(a)(1) (prohibiting discrimination against any race, any religion, and sexual orientation).

Appellants argument to the contrary relies on the incorrect premise that the "MHRA forbids the Larsens from posting a website statement explaining their religious beliefs about marriage and how those beliefs affect their expressive decisions."  App. Br. at 41.  While it is difficult to analyze a hypothetical statement that has not been provided or uttered, the MHRA does not ban statements about beliefs, religious or otherwise.  *See* Minn. Stat. § 363.11, subd. 1(a)(1) (containing no regulation of speech, and referring only to the provision of "goods, services, facilities, privileges advantages, and accommodations of a place of public accommodation").[7]

---

[7] This is a pre-enforcement challenge.  Appellants description of their planned business includes certain planned details related to websites and contracts that are rather unusual, and which are simply too hypothetical to support standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992); *Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir. 1994). In addition, Minnesota Attorney General Lori Swanson has not been asked to enforce the Minnesota Human Rights Act in this case, nor in any prior civil or criminal action with similar factual circumstances to those presented in this case. As such, she is not a proper party to this case.  *See Ex Parte Young*, 209 U.S. 123, 156 (1908); *281 Care Committee v. Arneson*, 766 F.3d 774, 796 (8th Cir. 2014).

To the extent Appellants seek to post a sign or statement stating that their business will not serve certain customers based on a protected characteristic, the United States Supreme Court has explicitly held that Minnesota law can lawfully prohibit such a sign. *Rumsfeld*, 547 U.S. at 62 (stating that a law preventing the posting of a sign stating "White Applicants Only" does not regulate speech).

As the district court properly found, the MHRA is a content-neutral, generally-applicable business regulation that "applies to all public accommodations and all business engaged in the provision of a service, outlawing discrimination against customers or prospective customers on the basis of a protected status." Add. 33 (citing Minn. Stat. §§ 363A.11, 3634A.17). It regulates non-expressive conduct and does not in any way target or regulate speech or expression, nor discriminate against viewpoints. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 387-88 (1992); *Jaycees*, 468 U.S. at 623-34, 628 (recognizing interest in regulating discriminatory conduct "wholly apart from the point of view such conduct may transmit").

### C. Appellants' Arguments Are Without Merit.

Appellants attempt to distinguish the applicable cases by drawing an analogy to court decisions involving laws that attempted to regulate the speech of various types of publishers, primarily newspaper publishers. *See* App. Br. at 37-40. For example, Appellants cite cases such as *Miami Herald Pub. Co. v. Tornillo*, which

involved a law that specifically regulated newspaper content and assumed control over key editorial decisions, 418 U.S. 241 (1974), and *Pacific Gas & Elec. Co. v. Public Utilities Commission of California*, a plurality decision involving the content in a utility company's mailers to customers. 475 U.S. 1, 20-21 (1986). But in each of these cases, "the government commandeered a speaker's means of reaching its audience and required the speaker to disseminate an opposing point of view." *Elane Photography*, 309 P.3d at 67. Here, Appellants do not allege that they are publishers, but instead propose to sell videography services to customers. Further, as discussed above, the MHRA does not regulate the content of their work nor exercise editorial control over the work; rather they are merely required to sell services to all customers regardless of the customers' protected status.

Reliance by Appellants and certain *Amici* on *Wooley v. Maynard*, 430 U.S. 705 (1977), is misplaced. In *Wooley*, the majority of the Court held that a state law which required residents to affix a license plate bearing the State motto to their car constituted compelled speech. By contrast, the MHRA does not force Appellants to act as bulletin board nor to speak *any* specific message.

The two anti-discrimination cases Appellants rely on are also inapposite. Both cases involve the free association claims of private organizations which alleged government interference with a speaker's own private message. They do not involve the sale of a service to the public. In *Hurley v. Irish-American Gay,*

19

*Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), the case primarily relied on by Appellants, a private parade was forced to admit a group of marchers seeking to express its own distinct message.  Here, unlike *Hurley*, Appellants are a business selling to the public, not a private organization expressing a message.  In addition, they can "easily disclaim personal sponsorship" of the content of a wedding video created for a customer. Add. 45.  Likewise, *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), involved a private association that was ordered to alter its membership, not a business selling services to the public.

Ultimately, Appellants seek an exemption from anti-discrimination laws that courts have never previously granted. The proposed rule of law espoused by Appellants is without any limiting principle,[8] allowing any person or business selling to the public to discriminate based on any protected status by simply claiming an expressive or creative purpose to their business.  *Arlene's Flowers,* 289 P.3d at 556.  Such a rule is fundamentally inconsistent with prior decisions of the United States Supreme Court, which has explained that "like violence or other types of potentially expressive activities that produce special harms distinct from

---

[8] Within the context of wedding services, Appellants' rationale would allow a business to refuse to serve individuals protected for reasons other than sexual orientation, including interracial marriage, *Loving*, 388 U.S. at 3 (setting forth the religious basis for opposing interracial marriage at that time), or customers that have different religious faiths. Moreover, Appellants have not articulated any limiting principle that would prevent this rule from applying outside the context of wedding services.

their communicative impact, [discriminatory] practices are entitled to no constitutional protection." *Jaycees*, 468 U.S. at 628.

### D. The MHRA Satisfies Any Level Of Scrutiny.

As discussed above, the MHRA prohibits conduct and not speech, and therefore does not pose a First Amendment issue at all. *See R.A.V.,* 505 U.S. at 389; *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). The district court therefore concluded that the proposed website language did not invoke First Amendment protections. *Supra* at n.4.

The district court further held that as-applied to Appellants' proposed wedding videos, the MHRA is a content-neutral statute that at most incidentally affects speech and expression.[9] Add. 31-33. Such a regulation will be upheld if it furthers an important or substantial governmental interest; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

---

[9] Appellants do not argue that their business entails expressive conduct, and such have waived any such argument. *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007) (points not meaningfully argued in an opening brief are waived). But, for the reasons discussed herein, the MHRA would survive the applicable scrutiny. *See infra; see also O'Brien*, 391 U.S. at 377; *Rumsfeld*, 547 U.S. at 67-68 (concluding the law does not violate *O'Brien*, even if regarded as regulating expressive conduct); *Texas v. Johnson*, 491 U.S. 397, 407 (1989) (same); *see also R.A.V.*, 505 U.S. at 385 ("nonverbal expressive activity can be banned because of the action it entails, but not the ideas it expresses").

The district court concluded that the MHRA "easily passes constitutional muster." Add. 37.

Appellants erroneously argue that the MHRA is subject to strict scrutiny. *See* App. Br. at 52. Because the MHRA neither regulates speech, nor is content or viewpoint based, strict scrutiny analysis is not applicable. Even if it were, the United States and Minnesota Supreme Courts have already recognized that the MHRA is supported by compelling interests and is narrowly tailored, surviving strict scrutiny. *Jaycees*, 468 U.S. at 628-29; *McClure*, 370 N.W.2d at 853. The district court in this case agreed. Add. 41 n. 27.

The MHRA was passed to ensure that all people in Minnesota would be entitled to "full and equal enjoyment" of public accommodations and services. Act of March 7, 1885, ch. 224, § 1, 1885 Minn. Laws 295, 296. "[A]cts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique evils that the government has a compelling interest to prevent." *Jaycees*, 468 U.S. at 628; *see also McClure*, 370 N.W.2d at 853 (describing State's compelling interest in "insur[ing] that all its citizens have equal opportunity for employment" and "afford[ing] its citizens equal access to all accommodations open to the general public"); *supra* at 2-5 (explaining the Task Force and legislative findings and the rationale behind adding sexual orientation as a protected status in the MHRA). The MHRA "reflects the State's strong historical

commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services. That goal, which is unrelated to the suppression of expression, plainly serves compelling state interests of the highest order." *Jaycees*, 468 U.S. at 624 (citation omitted); *supra* at 2-5.

A state anti-discrimination law protecting a group that is a target of discrimination will not, "as a general matter, violate the First or Fourteenth Amendment." *Hurley*, 515 U.S. at 572. The Minnesota Legislature included sexual orientation as a protected status under the MHRA based on a record of evidence showing sexual orientation formed the basis for targeted discrimination in Minnesota. The Governor's Task Force on Gay and Lesbian Minnesotans found "substantial societal hostility to homosexuality" and "overwhelming" evidence that "gays and lesbians are targets of considerable discrimination in the state of Minnesota." App. 330, 332-33. The Task Force recognized that the harm existed whenever an individual was turned away by a business that otherwise served any other member of the public, and that the discrimination was "damaging to society as a whole." *Id.* As such, the MHRA is supported by a compelling reason to prohibit discrimination by all businesses which survives strict scrutiny. *Jaycees*, 468, U.S. at 624; *McClure*, 370 N.W.2d at 853.

The MHRA is also narrowly tailored because the incidental restriction on Appellants' claimed First Amendment freedoms is no greater than is essential to

23

further its interest. The law is carefully circumscribed to prohibit only what it seeks to stop—namely discrimination. *See Jaycees*, 468 U.S. at 628-29; *McClure*, 370 N.W.2d at 853.

Appellants argue the law should be tailored to exempt "expressive business" but they do not identify any case law recognizing such a distinction, propose any judicially manageable standard, nor identify a standard that would not allow broad discrimination. Instead, Appellants propose an exception that would "substantially frustrate" the compelling interest of "eliminating discrimination." *McClure*, 370 N.W.2d at 853 (rejecting argument that MHRA should provide an exemption for sincerely held religious beliefs). For these reasons, the district court was correct to find that "Minnesota has a compelling, and not just a substantial, interest in preventing invidious discrimination in public accommodations because of sexual orientation and that interest is present in the context of businesses providing wedding-related services." Add. 38.

Because the MHRA survives strict scrutiny, it also withstands any lower level of scrutiny that may apply. *See O'Toole v. O'Connor*, 802 F.3d 783, 789 (6th Cir. 2015) (analyzing preliminary injunction motion, although the parties disagreed whether strict scrutiny applied, the court concluded that it did not matter because plaintiff did not demonstrate likelihood of success on merits if strict scrutiny was applied); *Alaskan Indep. Party v. Alaska*, 545 F.3d 1173, 1180 (9th Cir. 2008), *as*

*amended* (Oct. 22, 2008) ("[W]e ultimately need not decide what level of scrutiny to apply, because Alaska's primary election law withstands even strict scrutiny."); *Adams v. Zenas Zelotes, Esq.*, 606 F.3d 34, 38 n.2 (2d Cir. 2010) (similar).

## II.   APPELLANTS' FREE ASSOCIATION CLAIM FAILS AS A MATTER OF LAW.

Appellants argue that, as applied to them, the MHRA violates their First Amendment right to expressive association.  *See* Am. Compl. at ¶¶ 228-44, App. 96-98.  The district court correctly rejected this claim.  Add. 51

The First Amendment protects the "right to associate for the purpose of speaking" and the government may not "restrict individuals' ability to join together and speak." *Rumsfeld*, 547 U.S. at 68.  Appellants do not, however, have a First Amendment right to discriminate against customers.  As the Supreme Court has explained: "[i]nvidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections."  *Hishon*, 467 U.S. at 78 (denying law firm's First Amendment association challenge to Title VII, claiming a right to discriminate against a female lawyer) (quoting *Norwood v. Harrison*, 413 U.S. 455, 470 (1973)).

"To determine whether a group is protected by the First Amendment's expressive associational right, [the Court] must first determine whether a group engages in 'expressive association.'"  *Dale*, 530 U.S. at 648.  Appellants'

expressive association challenge fails because Telescope Media is a business not organized for a specific expressive purpose. *See Gifford*, 137 A.D.3d at 42 (purpose of the rental hall business was to "mak[e] a profit through service contracts with customers" and was not expressive). Indeed, "a speaker cannot erect a shield against laws requiring access simply by asserting that mere association would impair its message." *Rumsfeld*, 547 U.S. at 69 (citation and quotation marks omitted). Appellants' association claim also fails because Appellants are not being required to "associate" with customers in a constitutional sense. *Id.* (explaining that a school "associate[s] with military recruiters in the sense that they interact with them" but that they nonetheless are outsiders and not "members of the schools expressive association.").

Appellants argue that "[b]usinesses enjoy a right to expressive association the same as individuals," and "some businesses can raise expressive association claims." App. Br. at 43-44. But none of the cited cases support Appellants' argument that a business providing services to the public constitutes an expressive association, and United States Supreme Court law has taken a narrower view. *See, e.g., Rumsfeld*, 547 U.S. at 69. It is undisputed that Appellants are not required to take on customers as "members", *see id.; Dale*, 530 U.S. at 648, nor are they prohibited from expressing their views about marriage.

Regardless, as discussed *supra/infra* at 21-25, the State's interest in ending discrimination is sufficiently compelling to warrant any incidental incursion on Appellants' alleged right to expressive association. *See* Add. 50-51 (even assuming associating with a customer is "expressive association," the slight infringement is justified "because it serves the State's compelling interest in eliminating discrimination" (citation and quotation marks omitted).)

## III. THE MHRA IS NEUTRAL AND GENERALLY APPLICABLE AND THEREFORE DOES NOT VIOLATE THE FREE EXERCISE CLAUSE.

Appellants argue the MHRA violates their Free Exercise rights under the First Amendment. The district court properly concluded the claim fails as a matter of law. Add. 53.

The Free Exercise Clause of the First Amendment "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990). The Supreme Court has explained:

> [w]hen followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity. Granting an exemption….operates to impose [the follower's] religious faith on the [person sought to be protected by the law].

*United States v. Lee*, 455 U.S. 252, 261 (1982).

The requirement that laws be neutral and generally applicable are "interrelated." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531 (1993). A law is not neutral only "if [i]ts object …. is to infringe upon or restrict practices because of their religious motivation." *Id.* at 533. And a law is not generally applicable only if it "impose[s] burdens only on conduct motivated by religious belief" while allowing exceptions for secular conduct or for more favored religions. *Id.* at 543. A valid law that is neutral and generally applicable need only be rationally related to a legitimate government interest, regardless of an "incidental effect of burdening a particular religious practice." *Id.* at 531, 533.

The MHRA does not target or regulate religion and is both neutral and generally applicable. *McClure*, 370 N.W.2d at 851 ("Because the State of Minnesota is neither attempting to regulate religious beliefs or to single out any particular religious belief for adverse treatment, the Minnesota Human Rights Act is a facially-neutral regulation." (*citing Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972)).

The MHRA exists for the important purpose of protecting all of Minnesota's residents and visitors from discrimination based on a range of protected characteristics, including sexual orientation. *See* Minn. Stat. §§ 363A.11, subd. 1(1); 363A.17(3). The MHRA is neutral because it applies to all such discrimination, regardless of the underlying motive. The MHRA is generally

applicable for the same reason—it does not target religion or any particular religious belief, but instead prohibits discrimination and ensures that places of public accommodation and businesses treat all customers equally. *See* Minn. Stat. §§ 363A.11, subd. 1(1), 363A.17.

Cases considering similar anti-discrimination laws have consistently reached the same result. *See Masterpiece Cakeshop Inc.*, 370 P.3d 272 (denying argument that Free Exercise Clause allows baker to decline to make a cake for same-sex wedding in violation of anti-discrimination law); *Elane Photography*, 309 P.2d at 72-75 (same as to photographer).[10]

Appellants' arguments to the contrary all fail. They assert that the MHRA employs "individualized assessments and exemptions" which lack neutrality, because the phrase "legitimate business purpose" is a vague standard. App. Br. at 45. The phrase "legitimate business purpose" is based on language commonly used in analyzing anti-discrimination statutes under the *McDonnell-Douglas* test, crafted by the United States Supreme Court. *McDonnell Douglas Corp. v. Green*,

---

[10] Courts have also rejected similar objections when raised in race-based cases. *See Loving*, 388 U.S. at 3; *Piggie Park Enterprises, Inc.*, 256 F. Supp. at 945 (owner of restaurant chain refused to serve black patrons based on his religious beliefs opposing racial integration), *aff'd* 390 U.S. 400, n.5 (1968) (describing "defendants' contention that [Title VII] was invalid because it 'contravenes the will of God' and constitutes an interference with the 'free exercise of Defendant's religion" as "patently frivolous" and explaining that "this is not even a borderline case").

411 U.S. 792 (1973); *see Scott v. CSL Plasma, Inc.*, 151 F. Supp. 3d 961, 967 (D. Minn. 2015) (relying on *McDonnell-Douglas* analysis in evaluating business discrimination claim under Minn. Stat. § 363A.17); *Gold Star Taxi & Transp. Serv. v. Mall of Am. Co.*, 987 F. Supp. 741, 747 (D. Minn. 1997) (same); *Aase v. Wapiti Meadows Cmty. Techs. & Servs., Inc.*, 832 N.W.2d 852, 857 (Minn. App. 2013) (recognizing that a "legitimate business purposes" within the meaning of MHRA is analyzed using the second step of the *McDonnell-Douglas* test); *see also* Add. 47-48 (citing cases analyzing the meaning of "legitimate business purpose").

Appellants argue the MHRA is not generally applicable because it "categorically exempts others based on religious views." App. Br. at 46. Appellants are wrong. The MHRA, like other anti-discrimination statutes, prohibits discrimination on the basis of a protected status such as race, sexual orientation, gender, or religion, etc. This framework is inherently neutral as to what motivates the person to deny services—it prohibits discrimination based on protected status regardless of whether the motivation is religious or secular.[11] Here, unlike in *Lukumi*, there is no "religious gerrymander." *See Lukumi*, 508 U.S. at 534 (concluding the law's design "accomplishes . . . a 'religious gerrymander,'" and that "suppression of the central element of the Santeria worship service was

---

[11] By contrast, where an employer or business owner acts for a reason unrelated to the person's protected status, they are not discriminating and therefore do not violate the statute.

30

the object of the ordinance").  The MHRA does not, as Appellants argue, "categorically exempt[] others based on religious beliefs."  App. Br. at 46.

Appellants' contention that the existence of certain exemptions to the MHRA suggests that it is not "generally applicable" is similarly without merit.  *See Hobbie v. Unemp't Appeal Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987) (stating that the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices"); *Corp. of Presiding Bishop of Church of Christ of Latter Day-Saint v. Amos*, 483 U.S. 327 (1987) (holding that religious exemptions to Title VII do not violate the First Amendment); *see also, e.g., Elane Photography*, 309 P.2d at 74-75 (finding the New Mexico anti-discrimination statute neutral and generally applicable despite several religious and secular exemptions).  Exemptions accommodating religion are not proof that the law is targeting religion.

Appellants argue the hybrid-rights doctrine triggers strict scrutiny.  App. Br. at 47.  The district court correctly declined to apply that doctrine, observing that this Court "has never squarely adopted the doctrine."  Add. 53 n.35.  Essentially, Appellants allege that their free exercise claim should be entitled to strict scrutiny even though the MHRA is neutral and generally applicable because they are asserting it along with other alleged constitutional violations.  *Id.*

The so-called "hybrid-rights" standard has been described as controversial, illogical, and untenable. *See Combs v. Homer-Ctr Sch. Dist*, 540 F.3d 231, 243-47 (3d Cir. 2008) (per curiam). The theory of hybrid rights derives from *Smith* where the Court stated:

> The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections . . . ."

*Smith*, 494 U.S. at 881. This language is dicta, was not applied in *Smith*, and has not been applied by the United States Supreme Court since *Smith* was decided in 1990. *Combs*, 540 F.3d 231; *see also Leebaert v. Harrington*, 332 F.3d 134, 144 (2d Cir. 2003) (rejecting hybrid-rights theory); *Kissinger v. Board of Trustees of Ohio State University*, 5 F.3d 177, 178 (6th Cir. 1993) (same). The Eighth Circuit has also never squarely addressed the question.

*Smith* involved two plaintiffs who worked at a rehabilitation center and were fired after participating in a religious peyote ceremony. *Smith*, 494 U.S. 872. The State refused to grant them coverage under unemployment insurance, and they alleged violations of their First Amendment rights. *Id.* As Justice Souter later pointed out, *Smith* cannot be read to simply mean that any Free Exercise claim is entitled to strict scrutiny whenever "another constitutional right is implicated." *Lukumi*, 508 U.S. at 567 (concurring). Such a "hybrid exception would probably

be so vast as to swallow the *Smith* rule, and, indeed, the hybrid exception would cover the situation exemplified by *Smith*, since free speech and associational rights are certainly implicated [in that case]." *Id*. Yet the Supreme Court did not apply that standard. For these reasons, this Court should decline to adopt the hybrid-rights doctrine.

However, even under Appellants' articulation of the law, their claims would not trigger strict scrutiny because Appellants have failed to present another constitutional claim that is independently viable.[12] *Supra* at 8-27. As such, Appellants' Free Exercise claim is not entitled to strict scrutiny. Furthermore, although strict scrutiny does not apply, the MHRA satisfies a strict scrutiny analysis because it furthers a compelling state interest and is narrowly tailored to that interest. *Supra/infra* at 21-25.

Appellants also argue that application of the MHRA to Appellants would constitute "forced attendance and participation in a religious ceremony." App. Br. at 44-45 (arguing, without support, that all weddings are "religious," regardless of whether the couple being married had a civil service). Appellants did not make

---

[12] The limited courts that have adopted the hybrid-rights theory pushed by Appellants have required a higher level of proof as to the other constitutional claim. *E.E.O.C. v. Catholic University*, 83 F.3d 455, 467 (D.C. Cir. 1996) (requiring that the plaintiff prove that the other claim is "independently viable"); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1280 (10th Cir. 2004) (holding that the plaintiff must prove they are likely to succeed on the other claim). Appellants claims fail under any of these standards.

this argument below.  *See Williams v. Clarke*, 40 F.3d 1529, 1535 (8th Cir. 1994) (the Court ordinarily does not consider arguments for reversal raised for the first time on appeal).  In any event, such an argument fails.  The only case cited by Appellants did not involve a neutral and generally applicable anti-discrimination law, but instead involved a "state-sponsored and state-directed religious exercise in a public school."  *See Lee v. Weisman*, 505 U.S. 577, 586 (1992) (considering whether forced attendance at a public school benediction ceremony violated the Establishment Clause).  In any event, Appellants cite no authority to suggest that all same-sex weddings would be deemed religious, nor suggest that they would object to any religious ceremony not involving a same-sex couple.  Finally, as the Minnesota Supreme Court has recognized, the exception they propose would undermine the very purpose of the MHRA.  *McClure*, 370 N.W.2d at 853 (recognized that exemption for sincerely held religious beliefs would undermine the state's compelling interest in preventing discrimination).

## IV.  THE MINNESOTA HUMAN RIGHTS ACT DOES NOT VIOLATE EQUAL PROTECTION AS-APPLIED.

The district court correctly recognized that the Appellants failed to allege that they were treated differently than similarly-situated individuals, and their Equal Protection claim fails as a result.  Add. 57 (also noting that "[t]he Larsens'

proposed grouping of similarly-situated individuals is unlike any the Court has encountered in precedent[.]").[13]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *True v. Nebraska*, 612 F.3d 676, 683 (8th Cir. 2010). As such, Appellants must demonstrate that they are treated "differently than similarly situated" individuals. *Ganley v. Minneapolis Park and Recreation Bd.*, 491 F.3d 743, 747 (8th Cir. 2007). Further, unless Appellants are part of suspect class or their claims involve a fundamental right, the equal protection claim is subject to rational basis review. *Id.*

The MHRA is a facially neutral law, and applies to all those who sell services and accommodations to the public. Minn. Stat. §§ 363A.11 and 363A.17; *see also supra* at 8, 16-18, 27-34. Appellants base their Equal Protection claim on the allegation that they are "similarly situated to other expressive businesses in Minnesota that provide marriage-related services that express messages about

---

[13] Appellants have offered no arguments to the district court or here to support standing as to their Fourteenth Amendment claims. *Solum v. Board of County Comm'rs for County of Houston*, 880 F. Supp. 2d 1008, 1016 (D. Minn. 2012) (because the "responsive brief did not address" relevant issue, "these arguments are deemed waived"). Dismissal of these claims is appropriate for this reason as well.

marriage" and claim that they are treated differently because a business that does not discriminate against same-sex couples is not punished. Am. Compl. at ¶¶ 285, 287-89, App. 104. But the MHRA applies to all businesses who deny services based on a protected characteristic, regardless of the reason for their action. A videographer who does not believe in opposite-sex marriage must serve both same-sex and opposite-sex couples, just like a videographer who does not believe in same-sex marriage must serve both same-sex and opposite-sex couples. As such, Appellants are treated the same as similarly situated individuals.

Appellants are not similarly situated to other businesses who sell services regardless of protected characteristic and, therefore, Appellants may be treated differently under the MHRA. "State actors may . . . treat dissimilarly-situated people dissimilarly without running afoul of the protections afforded by the clause." *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000)*; see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 223–25, (1995) ("A denial of equal protection entails, at a minimum, a classification that treats individuals unequally.")

Finally, as demonstrated *supra* at 21-25, the MHRA serves Minnesota's rational and compelling state interest in prohibiting discrimination and all businesses are subject to the same prohibitions on discrimination regardless of their

religious or other beliefs.  For all of these reasons, Appellants' Equal Protection claim fails as a matter of law.

## V. THE MINNESOTA HUMAN RIGHTS ACT DOES NOT VIOLATE THE UNCONSTITUTIONAL CONDITIONS DOCTRINE AS-APPLIED.

Appellants argue the MHRA violates the unconstitutional conditions doctrine as-applied.  The district court was correct when it dismissed Appellants' unconstitutional conditions claim.  Add. 53-55.

Appellants' unconstitutional conditions claim fails for at least two reasons. First, there is no violation of the unconstitutional conditions doctrine because the MHRA does not infringe Appellants' speech or otherwise violate the First Amendment. *Supra* at 8-34; *see also Rumsfeld*, 547 U.S. at 59 (not an unconstitutional condition because the challenged law did not require law schools to say anything); *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 212 (2003); *Rust v. Sullivan*, 500 U.S. 173, 175 (1991); *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 545 (1983).

Second, Appellants' unconstitutional conditions claim fails because Appellants have not alleged the government has denied them a benefit.  *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (explaining that the government cannot condition the grant of a benefit on forfeiture of protected First Amendment speech).

Appellants allege that the right at issue in this case is "the right to make a living in the occupation of one's choice, the right to run a business, and the right to sell speech." Am. Compl. at ¶ 280, App. 103. Appellants fail to identify any authority to support such a constitutional right. Instead, on appeal, Appellants articulate a different right: the "right to promote their religious views about marriage through their films." App. Br. at 49. Appellants did not raise this rather circular argument below and it is waived. *See Williams*, 40 F.3d at 1535.

In any event, the cases Appellants cite are inapposite. *See Perry*, 408 U.S. at 596 (involving the nonrenewal of a public employee's contract); *Lefkowitz v. Cunningham*, 431 U.S. 801, 808 (1977) (involving deprivation of a person's position as an officer in a private, voluntary political association); *Bourgeois v. Peters*, 387 F.3d 1303, 1324 (11th Cir. 2004) (involving the recognized right to be free from unreasonable search and seizures). Here, the MHRA does not require surrender of Appellants' rights to exercise their First Amendment rights to speak about their views on marriage. It merely requires that business owners not discriminate on the basis of protected categories when selling goods or services.

## VI. MINN. STAT. § 363A.17(3) DOES NOT VIOLATE PROCEDURAL DUE PROCESS BECAUSE "LEGITIMATE BUSINESS PURPOSE" IS NOT UNCONSTITUTIONALLY VAGUE.

Appellants allege that Minn. Stat. § 363A.17(3) violates procedural due process because the phrase "legitimate business purpose" is unconstitutionally

vague. Am. Compl. ¶ 298-306, App. 105-06. The district court properly dismissed this claim. Add. 59. The phrase "legitimate business purpose" is the same legal standard applied by the United States Supreme Court in *McDonnell Douglas Corp.*, 411 U.S. 792. Given the significant legal authority applying this phrase, Appellants' claim fails as a matter of law.

Under the Fourteenth Amendment, a party has a right to due process of law before deprivation of "life, liberty, or property." U.S. Const. amend XIV, § 1; *see also Christiansen v. W. Branch Cmty. Sch. Dist.,* 674 F.3d 927, 934 (8th Cir. 2012) (discussing due process and property and liberty interests).[14] A statute is void for vagueness under the Fourteenth Amendment if it "'either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Jaycees*, 468 U.S. at 629 (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)) (dismissing claims that the MHRA was unconstitutionally vague under the Fourteenth Amendment).

In a prior case considering whether the MHRA was unconstitutionally vague, the United States Supreme Court generally upheld the law because it used

---

[14] Procedural due process is required only when a party has a protected interest at stake. *See, e.g., Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972). Appellants do not identify what protected property or liberty interest underlies their claim.

"familiar standards" that other courts use, which "ensure[s] that the reach of the statute is readily ascertainable."[15]  *See Jaycees*, 468 U.S. at 629-30.  Indeed, "legitimate business purpose" is not vague because courts analyze this and similar phrases with exceeding regularity, especially in the context of the *McDonnell-Douglas* framework. *E.g.*, *McDonnell Douglas Corp.*, 411 U.S. 792 (creating test requiring courts to consider any "legitimate, nondiscriminatory reason" for alleged discriminatory act).

Both state and federal courts have expressly tied the *McDonnell-Douglas* framework to analysis of MHRA claims.  *See, e.g.*, *Wilking v. County of Ramsey*, 153 F.3d 869 (8th Cir. 1998) (considering employer's "legitimate business expectations" in analyzing both ADA and MHRA claims under *McDonnell-Douglas* framework); *Aase*, 832 N.W.2d at 857 (interpreting Minnesota Human Rights Act, stating second step of *McDonnell-Douglas* test is satisfied if defendant shows some evidence its actions were related to a "legitimate business purpose"); *State v. Sci. Computers, Inc.*, 393 N.W.2d 200, 203 (Minn. App. 1986) (same); *Ridler v. Olivia Pub. Sch. Sys. No. 653*, 432 N.W.2d 777, 782 (Minn. App. 1988) (same).

---

[15] The Court did not specifically analyze the phrase "legitimate business purpose." *Id.*

Appellants cite *Gray v. Kohl*, 568 F. Supp. 2d 1378 (S.D. Fla. 2008), but *Gray* involved a statute prohibiting a person from being near a school unless the person had "legitimate business." The case involved whether a religious organization distributing Bibles had "legitimate business." That is plainly not the same as asking whether a business had a "legitimate business purpose" for a decision, where the phrase "legitimate business purpose" has been used countless times in courts across the country. Appellants' claim that this frequently-employed phrase is "unconstitutionally vague" plainly fails as a matter of law.

On appeal, Appellants also argue the MHRA violates procedural due process because it allows unbridled discretion. App. Br. at 51-52. Appellants did not raise this argument below, and therefore waived it. *See Williams*, 40 F.3d at 1535.[16] Nevertheless, the MHRA does not permit unbridled discretion, because it involves a clearly articulated legal standard which the Minnesota Department of Human Rights must abide by in enforcing the statute.

## CONCLUSION

For the reasons stated herein, Appellees respectfully request that the Court affirm the grant of Appellees' Motion to Dismiss and the denial of Appellants Motion for Preliminary Injunction.

---

[16] Instead, Appellants argued to the district court that the statute permitted unbridled discretion and therefore violated the First Amendment's right to Free Speech. *See* App. 136, 151-53.

41

Dated:  March 6, 2018

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota

s/Alethea M. Huyser
ALETHEA M. HUYSER
Assistant Solicitor General
Atty. Reg. No. 0389270

JANINE KIMBLE
Atty. Reg. No. 0392032
ERIC BROWN
Atty. Reg. No. 0393078
Assistant Attorneys General

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1243 (Voice)
(651) 282-5832 (Fax)
alethea.huyser@ag.state.mn.us
janine.kimble@ag.state.mn.us
eric.brown@ag.state.mn.us

ATTORNEYS FOR APPELLEES

**CERTIFICATE OF COMPLIANCE
WITH FRAP 32**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,692 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 pt Times New Roman font.

s/Alethea M. Huyser
ALETHEA M. HUYSER
Assistant Solicitor General

**CERTIFICATE OF COMPLIANCE**
**WITH 8th Cir. R. 28A(h)(2)**

The undersigned, on behalf of the party filing and serving this brief, certifies

that the brief has been scanned for viruses and that the brief is virus-free.


s/Pamela J. Hewitt
Pamela J. Hewitt
Administrative Assistant